UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-80022-CIV-MARRA/MATTHEWMAN

ROY J. DIXON JR. and BLANCHE L. DIXON,

       Plaintiffs,

vs.

GREEN TREE SERVICING, LLC n/k/a DITECH
FINANCIAL LLC SUCCESSOR BY MERGER,
COUNTRYWIDE FINANCIAL CORPORATION,
COUNTRYWIDE BANK, COUNTRYWIDE HOME
LOANS, INC., COUNTRY WIDE HOME LOANS
SERVICING LP, BAC HOME LOANS SERVICING
LP, n/k/a BANK OF AMERICA, NA
SUCCESSOR BY MERGER, FANNIE MAE,

       Defendants.

_____/

## ORDER AND OPINION ON THIRD MOTION TO AMEND

       **THIS CAUSE** is before the Court upon Dixons' Motion Requesting Leave to File a Verified Second Amended Complaint Pursuant to FRCP Rule 15(a), Rule 19(a) and Rule 18(a) [DE 47] ("Third Motion to Amend"). The Court has carefully considered the motion, responses, reply, oral argument at a hearing on May 10, 2019, and is otherwise fully advised in the premises.

**Procedural History and Background**

1.      On January 8, 2019, Roy J. Dixon Jr. And Blanche L. Dixon ("Plaintiffs" or "the Dixons") filed a Complaint against Green Tree Servicing, LLC n/k/a Ditech Financial LLC ("Ditech") (DE 1).

2.      On February 6, 2019, the Dixons filed a Verified Amended Complaint against

"Green Tree Servicing, LLC n/k/a Ditech Financial LLC Successor by Merger,

Countrywide Financial Corporation, Countrywide Bank, Countrywide Home

Loans, Inc., Countrywide Home Loans Servicing LP, BAC Home Loans Servicing

LP, n/k/a Bank of America, N.A. Successor by Merger, and Fannie Mae" (DE 4).

3.      Defendants Federal National Mortgage Association ("Fannie Mae") (DE 23) and

Bank of America N.A. ("BOA") (DE 37) filed Motions to Dismiss the Amended

Complaint with Prejudice.

4.      The Dixons filed an "Amended[1] Motion Requesting Leave to File a Verified

Second Amended Complaint Pursuant to FRCP Rule 15(a)(2), Rule 19(a) and

Rule 18(a) and Requests 15 Days Extension of Time to Finish the Complaint"

(DE 38) ("Second Motion to Amend").

5.      Defendants BOA (DE 46), and Fannie Mae, jointly with Ditech (DE 42), filed

responses to the Second Motion to Amend.

6.      The Dixons then filed the instant Third Motion to Amend (DE 47).  The Third

Motion to Amend, unlike the first or Second Motion to Amend, attaches a

proposed Second Amended Complaint.

---

[1] On March 27, 2019, the Dixons filed a Motion Requesting Leave to File a Verified Second Amended Complaint Pursuant to FRCP 19(a), and 18(a) (DE 34) (the "First Motion to Amend").  The First Motion to Amend was denied by this Court on March 27, 2019 for failure to confer with opposing counsel and failure to include a statement indicating such conferral pursuant to Local Rules (DE 35).

7.      Ditech (DE 48), BOA (DE 55), and Fannie Mae (DE 59) filed responses to the

Third Motion to Amend.

8.      Defendants' responses to the Dixons' Second Motion to Amend are incorporated

by reference in the responses to the Dixons' Third Motion to Amend, which

together challenge all the causes of actions the Dixons wish to bring.

9.      The proposed Second Amended Complaint (DE 47-2) adds five new claims and

three new defendants:  Federal Housing Finance Agency, as Conservator of the

Federal National Mortgage Association, Law firm of Roberson, Anschutz &

Schneid PL, and Erik T. Samsing in his individual capacity.

10.     Plaintiffs proceeded for some time under the misguided belief that they

removed a state foreclosure action to this Court.  They did not, and were so

advised in an Order Denying Motion to Quash and Motion for Reconsideration

(DE 53), and at the hearing held on May 10, 2019.  The proposed Second

Amended Complaint improperly includes a description of this lawsuit as a

removed action.  *See, e.g.*, DE 47-2 at 1.

11.     The proposed Second Amended Complaint asserts the following claims:

1)  Beach of Contract;

2)  Violation of the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA");

3)  Violation of the Fair Dept Collection Practices Act ("FDCPA");

4)  Violation of 15 USC §1641(a)(c)(d)(2)(B)(e)(1)(A)(B)(f)(1)(2)(g)(1) (the "TILA

Claim");

5) Violation of 10 U.S.C. § 921(a)(1):  Larceny and wrongful appropriation;

6)  Civil RICO;

7)   Fraudulent Misrepresentation;

8)   Mortgage Fraud;

9)  Gross Negligence;

10)  Civil Theft; and

11)  Quiet Title and Rescission of the 2011 Loan Modification.

## Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*").  The Court's consideration is limited to the allegations presented.  *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).  Nevertheless, while a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action."  *Twombly,* 550 U.S. at 555 (internal citations and quotations omitted).  "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  The "[f]actual

allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

In addition to the requirements of *Twombly, Iqbal*, and Federal Rule of Civil Procedure 12(b), causes of action sounding in fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("*Ambrosia Coal*"). That rule provides that "[i]n alleging of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Consequently, "[t]o satisfy the Rule 9(b) standard, [fraud claims] must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal,* 482 F.3d at 1316-17 (citing *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) ("*Brooks*")).

Unless otherwise specified, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule goes on to state that "[t]he court should freely give leave when justice so requires." *Id*. Despite the rule that leave to amend should be given freely, the court may deny leave to amend on numerous grounds, including the futility of the

amendment.  *Maynard v. Bd. of Regents of Div. of Univs. of Florida Dept. of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1287 (11th Cir. 2003).  Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal.  *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citations omitted); *Bruce v. U.S. Bank Nat'l Assoc.*, – F.App'x -, Case No. 18-10553, 2019 WL 1959619, at *1 (11th Cir. May 2, 2019) ("The district court was correct that [Plaintiffs'] claims, as pleaded in the complaint, were outside the statute of limitations and that allowing [Plaintiffs] to amend their complaint would have been futile.")

Because Plaintiffs are proceeding *pro se*, however, their Complaint must be "liberally construed."  *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Id.*; see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice").

## Discussion

### Defendant Ditech

On March 8, 2019, Ditech filed a Notice of Bankruptcy and Imposition of Automatic Stay (DE 17).  In response thereto, this Court entered an Order On Suggestion Of Bankruptcy (DE 31) on March 20, 2019, automatically staying this civil action as to Ditech (the "Stay Order").

The Dixons' proposed Second Amended Complaint asserts legal claims against Ditech that request monetary damages.  As such, the Third Motion to Amend not only

violates the automatic stay in Ditech's Chapter 11 bankruptcy case in the Southern District of New York, but also violates this Court's March 20, 2019 Stay Order, which was entered weeks before the Third Motion to Amend was filed.  Any actual complaint subsequently filed that seeks monetary damages against Ditech would violate this Court's Stay Order and the automatic stay in Ditech's Chapter 11 bankruptcy case, and is void and without legal effect.  *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982).  Furthermore, it should be noted that parties willfully violating the automatic stay may find themselves subject to compensatory and punitive damages.  Hon. W. Homer Drake, Jr. *et al*, Chapter 11 Reorganizations, § 9:5 Automatic stay (2d ed.).

### Defendant Fannie Mae

The Dixons' proposed Second Amended Complaint drops Fannie Mae as a named defendant and does not appear to assert any claims against Fannie Mae. Accordingly, Fannie Mae's (DE 23) Motion to Dismiss with Prejudice the Amended Complaint is rendered moot.

### Defendant Bank of America

Plaintiffs sue BOA, individually and as successor by merger to BAC Home Loans Servicing, LP.[2]

---

[2]  Plaintiffs state that "[t]he causes of action for violation of FDUTPA and FDCPA contained herein [are] not alleged against Bank of America individually," however, under the title for FDUTPA Plaintiffs state "(Against defendants Bank of America successor-in-interest to BAC Home Loans Servicing, LP and Ditech Financial LLC)," and under the title for FDCPA Plaintiffs state "(Against defendants Bank of America and Ditech Financial LLC)."  DE 47-2 at 4, 18, 20.  In any case, Plaintiffs may not sue an entity that has been merged into another entity and no longer exists.

As an initial matter, BOA asserts each count fails to state a proper cause of action under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Additionally, BOA challenges each allegation in the new counts as an impermissible "shotgun pleading."[3]

I.   **Breach of Contract**

In their First Cause of Action, the Dixons appear to allege that BOA and Ditech breached two contracts:  the "2007 and 2011 mortgage contracts. . ."  DE 47-2, ¶ 86. The statute of limitations to bring a claim for breach of contract is five years.  *See* Florida Statute § 95.11(2)(b).  As such, BOA asserts this claim is either seven years or three years too late, respectively, and urges the Court not to allow this amendment as it fails for futility.

Plaintiffs respond by asserting that the five year statute of limitations was stayed when they filed for bankruptcy in 2016.  This is not correct.[4]

Accepting the facts alleged in the proposed complaint as true, the five year statute of limitations began to run on January 25, 2007 when Plaintiffs executed a

---

[3]  *See e.g., Strategic Income Fund, LLC v. Spear, Leeds & Kellogg*, 305 F. 3d 1293, 1295 n.9 (11th Cir. 2002); *U.S. ex rel. Atkins v. McInteer*, 470 F. 3d 1350, 1354 n.6 (11th Cir. 2006).

[4]  The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, does not extend to lawsuits *initiated* by the debtor.  *See* 11 U.S.C. § 362; *Crosby v. Monroe County*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004) citing *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) (the automatic stay is inapplicable to suits by the debtor); *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C. Cir. 1989) (same); *see also Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles County, Inc.*, 977 F.2d 1224, 1227 (8th Cir. 1992); *Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.*, 49 B.R. 360, 362 (S.D. Fla. 1985) (stating that the automatic stay provision only applies to proceedings *against* the debtor).

promissory note in favor of Countrywide (DE 47-2, ¶ 23), and on January 31, 2011 when Plaintiffs executed a modification novation with BOA (DE 47-2, ¶ 33). Accordingly, Plaintiffs' breach of contract claims expired on January 25, 2012, and January 31, 2016, respectively.

11 U.S.C. § 108(a)(2),[5] however, provides for the extension of the applicable statute of limitation under non-bankruptcy law *when the statute of limitation has yet to expire at the time the bankruptcy case has commenced*. *In re Mid-Continent Electric, Inc.*, 278 B.R. 601, 604 (Bkrtcy. M.D. Fla. 2002); *In re Butler Logging, Inc.*, 538 B.R. 174, 183 (Bkrtcy. S.D. Ga. 2015) (by its express terms, 11 U.S.C. § 108(a) applies only to actions which the debtor could commence pre-petition).  Plaintiffs state they filed for bankruptcy on May 6, 2016.  DE 47-2, ¶ 57.  Since the five year statute of limitations for their breach of contract claims expired *before* Plaintiffs filed for bankruptcy on May 6, 2016, § 108 may not be used to extend the statute of limitations in this case.

_____

[5]  11 U.S.C.A. § 108, Extension of time, provides, in pertinent part:
(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of--
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) two years after the order for relief.
In the case of voluntary bankruptcy petitions, the "order of relief" is the filing of the bankruptcy petition. 11 U.S.C. § 301(b).  *Kerfoot v. FNF Servicing, Inc.*, 13-CV-33, 2013 WL 5797662, at *5 (M.D. Ga. Oct. 25, 2013).

Accordingly, Plaintiffs may not amend their First Cause of Action for breach of the "2007 and 2011 mortgage contracts. . ." [DE 47 ¶86] because it is barred and subject to dismissal with prejudice.

## II.    Violation of FDUTPA

In their Second Cause of Action, the Dixons allege that BOA[6] and Ditech violated FDUTPA by "deceitfully charging the Dixons' escrow account force-placed insurance without notice to them . . ."  DE 47-2 ¶ 94.

FDUTPA, however, expressly exempts banks regulated by federal agencies.  *See* Florida Statute § 501.212(4)(b)-(c); *Bankers Trust Co. v. Basciano*, 960 So. 2d 773, 778-79 (Fla. Dist. Ct. App. 2007); *George v. Wells Fargo Bank, N.A.*, No. 13-80776-CIV, 2014 WL 61487, *5 (S.D. Fla. Jan. 8, 2014) ("Plaintiff has sued the entity 'Wells Fargo Bank, N.A.'  There can be no dispute that 'N.A.' stands for 'National Bank'").  As a National Bank, BOA is exempt from FDUTPA.  Therefore it would be futile to allow the Dixons to amend their Second Cause of Action.

## III.    Violation of FDCPA

In their Third Cause of Action, the Dixons allege that BOA and Ditech, as the servicers of their loan, violated the FDCPA by harassing and abusing them in "the collection of an unlawful debt by delivering notices seeking payment of money not owed, misapplying payments, and wrongly placing the loan in past due status."  DE 47-2 ¶ 99.

---

[6]  *See supra* footnote 2.

To state a claim under the FDCPA, a plaintiff must plead: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1235 (S.D. Fla. 2015) citing *Bentley v. Bank of Am., N.A.,* 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (internal quotation marks and citation omitted).

The FDCPA removes from the definition of "debt collector" any person whose activity concerns a debt which was not in default at the time it was obtained by such person. *See* 15 U.S.C. § 1692a(6)(F); *Bohringer*, 141 F. Supp. 3d at 1235; *Benjamin v. CitiMortgage, Inc.,* Case No. 12-62291-CIV, 2013 WL 1891284, at *3 (S.D. Fla. 2013); *see also Reese v. JPMorgan Chase & Co.,* 686 F. Supp. 2d 1291, 1308 (S.D. Fla. 2009) ("Under the FDCPA, consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors,' as long as the debt was not in default at the time it was assigned.").

Here, Plaintiffs have not alleged that the consumer debt BOA was attempting to collect was in default at the time it was transferred to BOA.  Therefore, this Count fails to state a claim as BOA does not meet the FDCPA definition of debt collector, which requires that the subject debt be in default at the time it was assigned to BOA.

BOA asserts that it began servicing Plaintiffs' loan before it went into default, and therefore this claim fails as a matter of law and the amendment is futile.  This assertion of fact, however, is outside the four corners of the complaint.

BOA further argues that this claim is time-barred as having been filed outside the one-year statute of limitations for FDCPA claims.  15 U.S.C. §1692k(d).  An action to enforce liability under the FDCPA must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d); *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1272 (M.D. Fla. 2008); *Spence v. PNC Bank, N.A.*, No. 14-21431, 2014 WL 11961969, at *2 (S.D. Fla. 2014) (statute of limitations accrues when debtor is served with the debt collection complaint); *Perez v. Bureaus Inv. Grp. No. II, LLC*, No. 1:09-cv-20784, 2009 WL 1973476, at *2 (S.D. Fla. July 8, 2009) (same).

It is impossible to definitely determine if this claim is time-barred without allegations in the complaint identifying when the latest alleged violation occurred. Accordingly, this count may be curable by an amendment.  **If Plaintiffs attempt to reallege this claim, they must allege, in good faith, facts affirmatively showing (1) that the subject debt was in default at the time it was transferred to BOA; and (2) the date the latest FDCPA violation occurred**.  Failure to make these allegations based on identifiable evidence will result in this claim being dismissed with prejudice, and could result in the imposition of sanctions under Fed. R. Civ. P. 11.

IV. **Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641**

In their Fourth Cause of Action, the Dixons allege that BOA, as "successor-in-interest to BAC Home Loans Servicing, LP Lender of 2011 modification novation," violated TILA "when it purportedly transferred and sold the Dixons' 2007 void mortgage loan to 'Wilmington Trust, National Trustee for MFRA Trust 2014-2' during Mr. Dixon['s] bankruptcy proceeding and did not give notice to Mr. Dixon nor the

bankruptcy trustee of the transfer and/or sale of the 2007 void mortgage loan."  DE 47-2, ¶ 102.  Plaintiffs request "actual" and punitive damages.

In paragraph 65, Plaintiffs state that on *January 9, 2017,* Ditech "created a fraudulent assignment and purported to assign the Dixons' 2007 void refinance mortgage loan to Wilmington Trust, National Trustee for MFRA Trust 2014-2, a New York trust that had closed in 2014, in violation of 15 U.S.C. Code § 1641(f)(1)(2)(g)(1). See Exhibit 20."[7]  In paragraph 67 Plaintiffs allege that "[o]n *March 30, 2017* . . . Ditech executed another forged assignment and purported to repurchase the mortgage back from the closed trust, 'Wilmington Trust, National Trustee for MFRA Trust 2014-2' to itself.  See Exhibit 21."[8]

Plaintiffs' TILA claim is subject to dismissal with prejudice as being time barred.  There are two limitation periods under TILA depending upon the remedy sought.  Where, as here, monetary damages for violations of TILA are sought, there is a one-year statute of limitations.  See 15 U.S.C. § 1640(e) ("[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.").  The violation "occurs" when the transaction is consummated.  *Dixon v. Countrywide Home Loans, Inc.*, 710 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010) citing *In re Smith*, 737 F.2d 1549, 1552 (11th Cir.1984).  Thus, in this case, the one-year period

---

[7] No numbered exhibits are attached to the proposed Second Amended Complaint.

[8] *Id.*

began to run upon the date of the alleged transfer, *i.e.*, January 9, 2017 or March 30, 2017, and the latest time to file TILA claims on these alleged violations was January 9, 2018 or March 30, 2018.  Plaintiffs did not bring these claims until February 6, 2019.  As such, Plaintiffs' TILA claims are clearly time barred by the one-year statute of limitation and any amendment would be futile.

V.  **Violation of the Uniform Code of Military Justice, 10 U.S.C. § 921(a)(1)**:
Larceny and wrongful appropriation (against Ditech and attorney Samsing only)

In their Fifth Cause of Action, the Dixons allege, among other things, that Ditech and attorney Eric Samsing "knowingly and willfully filed forged documents upon the state court to unlawfully deprive [the] Dixons' of their home and to appropriate its use to Fannie Mae, who wasn't the owner of the obligation," in violation of the Uniform Code of Military Justice, 10 U.S.C. § 921(a)(1).  DE 47-1, ¶ 106.

The Uniform Code of Military Justice is applicable only to persons serving in the armed forces who are subject to court-martial jurisdiction.  *See* 10 U.S.C. § 802; 53A Am. Jur. 2d Military and Civil Defense § 242.  Plaintiffs' claim under the Uniform Code of Military Justice is not actionable because the investigation and prosecution of crimes is subject to executive discretion, and this Court has no authority to compel the Department of Defense or the Attorney General to initiate such an investigation or prosecution.  *Wise v. Heddell*, No. 09-CV-127, 2010 WL 2688730, at *4 (M.D. Ga. July 1, 2010).  Seeing that this Code in inapplicable in this Court, any amendment would be futile.  57 C.J.S. Military Justice § 94; *Weiss v. U.S.*, 510 U.S. 163, 165

(1994).

## VI.   <u>Civil RICO</u> <u>(18 U.S.C. § 1962)</u>

In their Sixth Cause of Action, the Dixons allege BOA, Ditech, the firm

Roberson, Anschutz & Schneid and Eric Samsing conspired to violate the Racketeer

Influenced and Corrupt Organizations Act.   "To establish a federal civil RICO violation

under 1962(c),[9] the plaintiffs must satisfy four elements of proof: (1) conduct (2) of

an enterprise[10] (3) through a pattern (4) of racketeering activity." *Bowes v.*

*Haymore*, No. 13-14304, 2015 WL 12533102, at *3 (S.D. Fla. Mar. 19, 2015) citing

*Coquina Investments v. Rothstein*, 2011 WL 197241, at *2 (S.D. Fla. Jan. 20, 2011);

---

[9]  The Dixons cite 18 U.S.C. §1962(a)(b)(c) as the basis for Defendant's violation; §1962(a)(b)(c) appears to be an improper amalgamation of the RICO statute.  It appears Plaintiffs are moving under § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity *or collection of unlawful debt*."  RICO expressly creates a civil cause of action for "[a]ny person injured in his business or property by reason of violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (emphasis added). Section 1962(a) prohibits a person from investing in an enterprise any income derived from a pattern of racketeering activity; and §1962(b) prohibits a person from using a pattern of racketeering activity to acquire or maintain control over an enterprise.

[10]  "The definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes." *U.S. v. Goldin Industries, Inc.*, 219 F.3d 1271 (11th Cir. 2000) ("*Goldin II*").  In this Circuit, the "person" and the "enterprise" cannot be the same person.  *U.S. v. Goldin Industries, Inc.*, 219 F.3d 1268, 1269 (11th Cir. 2000) (en banc) ("*Goldin I*"); *Doe v. Epstein*, No. 08-80893-CIV-MARRA, 2010 WL 11504810, at *4 (S.D. Fla. 2010) ("Both the United States Supreme Court and the Florida Supreme Court have required proof of a RICO 'enterprise' that is separate and distinct from the person charged with the RICO violation.")

*Dysart v. BankTrust*, 516 F.App'x 861, 863 (11th Cir. 2013).

To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature. *See* 18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-43 (1989); *see also State v. Lucas*, 600 So.2d 1093, 1094 (Fla. 1992); *Jackson v. BellSouth Tele.*, 372 F.3d 1250, 1264 (11th Cir. 2004) ("*Jackson*").  "It is by now well established that in order to prove a 'pattern of racketeering activity' it is not sufficient to simply establish two isolated predicate acts.  RICO targets ongoing criminal activity, rather than sporadic, isolated criminal acts . . ."  *Jackson*, 372 F.3d at 1264.

The Dixons allege that Ditech, the firm Roberson, Anschutz & Schneid PL, and attorney Eric Samsing were associated and conducted the affairs of an enterprise through a pattern of racketeering activity by conspiring with BOA in an organized mortgage scheme to defraud the Dixons (and the state court) to, among other things, unlawfully foreclose on the Dixons' home, to collect an unlawful debt, to sell the Dixons' 2007 void mortgage loan, and to execute fraudulent mortgage assignments. DE 47-2, ¶¶ 110-112, 115, 119, 124.  These allegations fail to state a RICO cause of action and it appears that Plaintiffs are attempting to use RICO to re-litigate the authenticity of the loan documents and Ditech's standing to bring the state foreclosure action.

While extremely convoluted, it appears that Plaintiffs are attempting to raise some sort of wire/mail fraud and/or extortion claims as a predicate for RICO.[11] Plaintiffs have not actually pled any facts that could be construed as extortion.  The Dixons seem to have simply used the word "extortion" and alleged that it is a basis for RICO without actually explaining which of any of the defendants' actions constitute extortion.

In relation to Plaintiffs' allegations that wire/mail fraud are the RICO predicates, Plaintiffs appear to assert in paragraph 124 that "the sale of Dixons 2007 void mortgage loan" was one predicate act.  The other conclusory allegations scattered throughout this count are simply too vague to support a claim, such as asserting, without any further elaboration, that defendants made "forgeries."  *See* DE 47-2, ¶ 127.

Federal Rule of Civil Procedure 9(b) applies to civil claims under RICO where fraud is the predicate act.  Thus, if Plaintiffs wish to base their RICO claim on a mail or wire fraud scheme, they must allege "(1) the precise statements, documents, or misrepresentations made;  (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal*, 482 F.3d at 1316–17 (citing *Brooks*, 116 F.3d at 1380–81).

---

[11]  *See* DE 47-2, ¶¶ 116, 117, 125.

In *Ambrosia Coal* and *Brooks*, the Eleventh Circuit affirmed the decisions of two district courts that dismissed RICO claims for failure to satisfy Rule 9(b).  In *Ambrosia Coal*, the Eleventh Circuit based its affirmance on the plaintiff's "fail[ure] to plead its civil RICO claims against each defendant with the required level of specificity."  482 F.3d at 1317.  Examples of dispositive deficiencies with the plaintiff's allegations included failure to "discuss the nature of each defendant's participation in the scheme," failure to "discuss each alleged statement, document, or  misrepresentation made with the proper level of precision," and reliance on "material misrepresentations without specifying the content or manner in which the statements misled" the plaintiffs.  *Id*. at 1317 n.12.

Similarly, in *Brooks*, the Eleventh Circuit affirmed the district court's dismissal of the plaintiffs civil RICO claims pursuant to Rule 9(b) where the plaintiff "lumped together all of the Defendants in their allegations of fraud" and the complaint was "devoid of specific allegations with respect to the separate Defendants."  *Brooks*, 116 F.3d at 1381.  In so holding, the Eleventh Circuit explained that plaintiffs had contravened "[p]erhaps the most basic consideration underlying Rule 9(b)" — provision of fair notice to the defendants of the claims against them.  *Id*. (alteration in original).  The court also noted that the plaintiff had "fail[ed] to set forth the time, place, and manner in which any specific predicate act occurred" and the allegations in the complaint "provide[d] no basis in fact upon which the Court could conclude that any specific act of any specific Defendants is indictable for mail or wire

fraud." *Id*.  When assessed under the framework set forth in *Ambrosia Coal* and *Brooks*, Plaintiffs' proposed complaint fails to state a RICO claim because it does not offer the specificity required by Rule 9(b).

Despite being pled in such a fashion that it is difficult to ascertain what the allegations are, it is clear that not only have Plaintiffs failed to satisfy the elements of RICO, but whatever "conduct" or "pattern" is alleged in this count is nothing more than a myriad of legal and factual conclusions that are an attempt to parrot the elements of a RICO claim in direct contravention of the pleading requirements of *Iqbal* and *Twombly*, which specifically prohibits formulaic recitation of a claim's elements.

In sum, Plaintiffs have failed to plead facts sufficient to prove that the Defendants operated as an enterprise, or that they engaged in a pattern of racketeering activity.  Thus, the RICO claim must be dismissed.  Moreover, Plaintiffs' RICO claims would still be subject to dismissal even if they were allowed to amend their complaint because, as explained, they complain of only one cognizable injury — the loss of their home to one victim - themselves - and thus could not establish the pattern of racketeering activity required to sustain a RICO claim.  *Jackson*, 372 F.3d at 1265; *Dysart v. BankTrust*, 516 F.App'x 861, 865 (11th Cir. 2013).  Accordingly, any amendment would be futile.

VII.   **Fraudulent Misrepresentation**

In their Seventh Cause of Action, the Dixons allege that BOA, Ditech, the law firm Roberson, Anschutz & Schneid and Eric Samsing made various fraudulent misrepresentations related to "the Dixons' 2007 void mortgage and note," and "permanent modification."

Under Florida law, the elements of fraudulent misrepresentation are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation. *Butler v. Yusem,* 44 So. 3d 102, 105 (Fla. 2010).

Specifically, the Dixons allege that BOA misrepresented to Mr. Dixon that once certain payments were timely made, he would receive a permanent loan modification.  Plaintiffs asserts they made the required payments on time, but a foreclosure action was brought against them on the original mortgage, not the modification.  DE 47-2, ¶¶ 29-32, 49, 130.  Acknowledging Plaintiffs are proceeding pro se, these allegations arguably assert that BOA made a false statement concerning a material fact (that once they made timely payments they would receive a permanent loan modification), that the offer induced Plaintiffs to act, and that Plaintiffs acted in reliance on the offer.  Noticeably absent, however, is the second element required for this cause of action listed above:  the allegation that BOA acted with the requisite *mens rea* (that it knew that its loan modification offer was false).

Additionally, Plaintiffs do not plead what statements or omissions were made by BOA, in what documents or oral representations, the time and place of each such statement, the person responsible for making same, the content of such statements, the manner in which they misled the Plaintiffs, and how Plaintiffs relied on anything to their detriment.  Plaintiffs' count for Fraudulent Misrepresentations suffers the same *Twombly* and 9(b) deficiencies as their count for RICO.  Plaintiffs have failed to state a cause of action for fraudulent misrepresentation and have, once again, simply parroted the elements.  This count again illustrates that Plaintiffs are simply trying to launch an improper collateral attack on the state Foreclosure Action.

Finally, the statute of limitations to bring a claim for fraudulent misrepresentation is four years.  *See* Fla. Stat. § 95.11(3)(j),(l).  In this case, the "injury" must either be the Notice of Acceleration or the Foreclosure Action itself.  Using the latest date of the Foreclosure Action, the statute of limitations has still run.  As previously argued, the Foreclosure Action was filed on October 28, 2014.  The first time this claim was arguably asserted was in Plaintiffs' Verified Amended Complaint filed on February 06, 2019 (DE 4).  Plaintiff had until October 28, 2018 to file a Fraudulent Misrepresentation claim against Defendants and, since they have not, the claim is time-barred.  See *Gonzalez v. Wells Fargo Bank, N.A.*, 604 F.App'x 908 (11th Cir. 2015).  Accordingly, amendment would be futile.

VIII.   **Mortgage Fraud**

In their Eighth Cause of Action, the Dixons allege BOA, Ditech, the law firm Roberson, Anschutz & Schneid and Eric Samsing engaged in mortgage fraud.  The mortgage fraud statute criminalizes material misstatements made during the mortgage lending process.  *See* Fla. Stat. § 817.545(2)(a) ("A person commits the offense of mortgage fraud if, with the intent to defraud, the person knowingly: (a) makes any material misstatement, misrepresentation, or omission during the mortgage lending process[12] ..."); *Shew v. Horvath*, No. 16-CV-766, 2017 WL 1399797, at *10 (M.D. Fla. Apr. 19, 2017) ("*Shew*"), *aff'd*, No. 17-12023, 2017 WL 4417592 (11th Cir. Oct, 4, 2017).  The elements of this felony crime include (1) obtaining a mortgage evidencing a debt, (2) by aid of fraudulent or false pretenses, (3) with intent to defraud.  The victim's reliance on the fraudulent or false representation is also an essential element of the crime of mortgage fraud.  *Adams v. State*, 650 So.2d 1039, 1041 (Fla. Dist. Ct. App. 1995); *Pizzo v. State*, 910 So.2d 287, 293 (Fla. Dist. Ct. App. 2005); *Shew*, 2017 WL 632515, at *5.  There are a number of reasons why this cause of action may not proceed.

---

[12]  "[T]he term 'mortgage lending process' means the process through which a person seeks or obtains a residential mortgage loan, including, but not limited to, the solicitation, application or origination, negotiation of terms, third-party provider services, underwriting, signing and closing, and funding of the loan."  Fla. Stat. § 817.545(1).

First, § 817.545 of the Florida Statutes is a penal statute and does not provide for a private cause of action.  *See* Fla. Stat. § 817.545; *Watson v. Bank of America Corp.*, No. 13-81137, 2014 WL 3667877, at *2-3 (S.D. Fla. Jul. 22, 2014).  Second, Plaintiffs did not allege fraud with sufficient particularity.  In fact, it appears that Plaintiffs, again, are simply attempting to attack the state foreclosure action with any cause of action that they can find that they think might apply.  *See, e.g.*, paragraph 142, "defendants engaged in a fraudulent foreclosure of the Dixons' property . . ."

Third, it is clear from the face of the proposed Second Amended Complaint that Plaintiffs' fraud claims are time-barred.  In Florida, an action for fraud must be commenced within four years "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence," but in no event more than 12 years after the date of the commission of the fraud.  Fla. Stat. §§ 95.031(2)(a); 95.11(3)(j).  The four-year statute of limitations attaches when Plaintiffs were first put on notice or had reason to believe that a cause of action has accrued.  *Korman v. Iglesias*, 825 F.Supp. 1010, 1014 (S.D. Fla. 1993) *aff'd*, 43 F.3d 678 (11th Cir. 1994).  The "fictitious assignments" complained of were "executed by Bank of America" on April 18, 2012 and June 6, 2013.  DE 47-2, ¶¶ 46-47, 139.  Any fraud claim related to these "fictitious assignments" expired on April 19, 2016 and June 7, 2017, respectively.  As stated throughout, the first time this claim was arguably asserted was in Plaintiffs' Verified Amended Complaint on

February 6, 2019.  Accordingly, amending this claim would be futile.

IX.    **Gross Negligence**

In their Ninth Cause of Action, the Dixons allege that BOA acted with gross negligence in "unlawfully misappropriating the Dixons' escrow account funds."  DE 47-2, ¶ 146.  A showing of "gross negligence" under Florida law requires the following elements: (1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act of omission occurring in a manner which evinces a conscious disregard of the consequences, as distinguished from careless disregard thereof, or from the more extreme willful or wanton disregard thereof.  38 Fla. Jur 2d Negligence § 4 citing *In re PSN USA, Inc.*, 426 B.R. 916 (Bankr. S.D. Fla. 2010).  To hold a party liable under Florida law for gross negligence, the court must find that the defendant had knowledge of the existence of circumstances that constituted a "clear and present danger" and yet still undertook a conscious, voluntary act or omission that was likely to result in injury.  *Hager v. Live Nation Motor Sports, Inc.*, 665 F. Supp. 2d 1290 (S.D. Fla. 2009).

This claim is time-barred.  The statute of limitations to bring a claim for gross negligence is four years.  *See* Florida Statute § 95.11(2)(b).  As such, this claim is over four years too late.  Accordingly, the amendment of this claim will not be permitted due to futility.

X.    **Civil Theft**

In their Tenth Cause of Action, the Dixons allege that BOA, Ditech, the law

firm Roberson, Anschutz & Schneid, and Eric Samsing violated Florida's civil theft

statute by, among other things, foreclosing on their home and misappropriating their

escrow account funds.  DE 47-2, ¶¶ 153-154.  Plaintiffs acknowledge that this cause of

action has a five year statute of limitations, and allege "[t]he State Court awarded

nonparty Ditech Financial LLC the unlawful foreclosure Judgment on April 18, 2016."

DE 47-2, ¶¶ 155-156, Fla. Stat. § 772.17.  Any allegation against Ditech violates the

automatic stay and cannot be used to preserve this claim.  There are no other dates

alleged making it is impossible to ascertain whether this claim is timely or barred by

the statute of limitations.

Pursuant to Florida's civil theft statute:

> Any person who proves by clear and convincing evidence that he or she
> has been injured in any fashion by reason of any violation of [the
> criminal theft statute, Fla. Stat. § 812.014,] has a cause of action for
> threefold the actual damages sustained and, in any such action, is
> entitled to minimum damages in the amount of $200, and reasonable
> attorney's fees and court costs in the trial and appellate courts.  Before
> filing an action for damages under this section, the person claiming
> injury must make a written demand for $200 or the treble damage
> amount of the person liable for damages under this section.

*Borden & Associates, Inc. v. Markovitz*, 14-CV-81489-MARRA, 2015 WL 12516640, at

*3–4 (S.D. Fla. 2015) citing Fla. Stat. § 772.11(1); *United Techs. Corp. v. Mazer*, 556

F.3d 1260, 1270 (11th Cir. 2009) ("*United Technologies*").

To state a claim for civil theft under Florida law, Plaintiffs must allege an injury resulting from a violation by Defendants of the criminal theft statute, Fla. Stat. § 812.014.[13]  *United Technologies,* 556 F.3d at 1270.  To do this, Plaintiffs must allege that Defendants (1) knowingly (2) obtained or used, or endeavored to obtain or use, Plaintiffs' property with (3) "felonious intent" (4) either temporarily or permanently to (a) deprive Plaintiffs of its right to or a benefit from the property or (b) appropriate the property to Defendants' own use or to the use of any person not entitled to the property.  Fla. Stat. § § 772.11 (providing civil remedy for theft or exploitation), 812.014(1) (criminal theft statute); *see Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1326–27 (11th Cir. 2006); *Gersh v. Cofman,* 769 So.2d 407, 409 (Fla. Dist. Ct. App. 2000) ("In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent."); *United Technologies*, 556 F.3d at 1270; *Seropian v. Wachovia Bank, N.A.*, No. 10-CV-80397-MARRA, 2010 WL 2949658, at *3 (S.D. Fla. 2010).  Taking Plaintiffs allegations as true, they do not set forth facts capable of establishing the required elements of this

---

[13]  The Florida theft statute provides:
(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:
      (a) Deprive the other person of a right to the property or a benefit from the property.
      (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
Fla. Stat. § 812.014(1).

claim.  This count is full of "naked assertions devoid of further factual enhancement."  *Twombly*, 550 U.S. at 555.

Furthermore, Defendants argue "not only did the Dixons fail to allege the requisite pre-suite notice in their pleadings, they also failed to allege that all conditions precedent to filing the suit had been met.  No allegation of a pre-suit demand exists nor is one attached to the proposed amendment.  This claim is not plead properly . . ."  DE 55 at 8.

The Court agrees that this claim is not plead properly, particularly with regard to the statutory elements of the tort of theft and criminal intent.  *See Kanarick v. Santander Consumer USA, Inc.*, 2013 WL 12085081, at *4 (S.D. Fla. 2013); *Ames v. Provident Life and Acc. Ins. Co.*, 942 F. Supp. 551, 560-61 (S.D. Fla. 1994).  Moreover, "[u]nder Florida law, a plaintiff in an action for conversion or civil theft must establish possession or an immediate right to possession of the converted property at the time of the conversion."  *U.S. v. Bailey*, 419 F.3d 1208, 1212 (11th Cir. 2005). Furthermore, it appears that Plaintiffs still live in their home.  Accordingly, their property has not been converted.

Defendants are correct that Plaintiffs have not alleged that they complied with the demand requirements of Fla. Stat. § 772.11(1).  The language cited above leaves no doubt that the statute requires that before an action for civil theft is filed the potential plaintiff must make a written demand for payment upon the defendant and cannot commence a suit until the expiration of the 30 days in the event no payment

is made.  *In re Naturally Beautiful Nails, Inc.*, 262 B.R. 131, 134 (Bkrtcy. M.D. Fla. 2001) citing *Korman v. Iglesias*, 736 F.Supp. 261 (S.D. Fla. 1990).

Accordingly, if Plaintiffs choose to replead this cause of action, they must allege, among other things, specific facts demonstrating an immediate right to possession of the converted property at the time of any conversion, allege the dates of any alleged thefts, the knowing nature and "felonious intent" of the thief for each theft, and if the theft was within five years, issue the pre-suit notice required by Fla. Stat. § 772.11.  Failure to make these allegations based on identifiable evidence will result in this claim being dismissed with prejudice, and could result in the imposition of sanctions under Fed. R. Civ. P. 11.

**Quiet Title/Rescission of 2011 Modification**

In this unnumbered count, the Dixons seek, pursuant to Florida Statute § 65.021, "quiet title and rescission of the 2011 modification novation on real property owned by Dixons in fee simple . . ."  DE 47-2, ¶ 157.  This claim, against BOA and "FHFA as Conservator for Fannie Mae," seems to primarily revolve around the argument that the 2011 Modification was not recorded and that certain taxes were not paid which taken together would negate the enforceability of the 2011 Modification and the underlying Note and Mortgage.  DE 47-2, ¶ 159.  These facts do not allege the elements of, and plausible facts for each of the elements for, a claim to quiet title.

To state a claim to quiet title, it must be alleged (1) that the plaintiff had title to the subject property; (2) how plaintiff obtained title to the property; (3) the chain of title;[14] (4) the alleged cloud or defect on the title and the basis upon which defendant claims an interest in or claims the title; and, in particular, (5) why the cloud is invalid or defendant's claim is not well founded.  Fla. Stat. § 66.061 (2014); *Woodruff v. Taylor*, 118 So.2d 822, 822 (Fla. Dist. Ct. App. 1960); *Korman v. SRMOF II 2011-1 Trust*, 15-CV-80949, 2015 WL 6121713, at *6-8 (S.D. Fla. Jul. 11, 2015) ("*Korman*") citing *D'Alessandro, Jr. v. Fidelity Federal Bank & Trust*, 154 So.3d 498, 499 (Fla. Dist. Ct. App. 2015).

Particularly, "a plaintiff seeking to quiet title to property or remove a cloud on property must show, with *clearness, accuracy, and certainty,* the validity of his or her title and the invalidity of the title of the opposing party."[15] *United States v. Angulo*, No. 12-CV-1379, 2012 WL 6009338, at *2 (M.D. Fla. Dec.3, 2012) (quoting *Rhodes v. JPMorgan Chase Bank, NA.*, No. 12-CV-80368, 2012 WL 5411062, at *3 (S.D. Fla. Nov. 6, 2012) ("*Rhodes*") (emphasis added); *Lane v. Quicken Loans, Inc.*, 2013 WL 2712283

---

[14]  "The additional remedy for quieting title was enacted in 1925.  It requires the party seeking relief to deraign his title in his pleading from the original source of title or for seven years before commencement of the action unless the court directs otherwise or the claim is from a common source.  Deraigning title means showing the title chain for the required time.  The deraignment must show the recording data for any recorded instruments in the chain of title.  Fla. Stat. § 65.061(3).  When a tax title is quieted, the title must be deraigned from the tax deed or the instrument or proceeding by which the taxing authority acquired title, as appropriate."  Quieting title, Trawick, Fla. Prac. & Proc. § 31:3 (2018-2019 ed.)

[15]  In this case, the "opposing party" is Fannie Mae and/or BOA.

*2 (M.D. Fla. 2013) (dismissing Complaint to quiet title in removed quiet title action); *Amador v. Bank of New York, Inc.*, 2013 WL 6157932 (S.D. Fla. 2013); *Helman v. Udren Law Offices, P.C.*, 14-CV-60808, 2015 WL 1565335, at *2 (S.D. Fla. Apr. 8, 2015) citing *Rhodes*, 2012 WL 5411062, at *3; *Korman*, 2015 WL 6121713, at *7 (holding that Plaintiff must show with "clearness, accuracy and certainty . . . the invalidity of the title of the opposing party.").  Generally, a note or mortgage remains a valid and enforceable lien against property, and does not, as a matter of law, constitute a cloud on the property supporting a quiet title claim.  *Kaan v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1271, 1274 (S.D. Fla. 2013) citing *Singleton v. Greymar Associates*, 882 So.2d 1004, 1007-08  (Fla. 2004).

Since quiet title is an equitable remedy, for a litigant to properly assert a quiet title action, such individual must allege facts in its pleading which shows that there exists no adequate remedy at law relative to the quiet title claim.  A failure to plead such facts may well result in a court determination that the pleading is deficient.  Effect of Adequate Remedy at Law on Action to Quiet Title or Remove Cloud, 15 *Cyc. of Federal Proc*. § 81:5 (3d ed.).  If Plaintiffs wish to replead this claim, they have a significant number of allegations that must be made, which must be clearly and specifically supported by allegations of fact directed to a specific defendant.  Until then, the remedy of quieting title that the proposed complaint requests is not available.  *See, Ellis v. Dixie Highway Special Road & Bridge Dist.*, 103 Fla. 795, 798, 138 So. 174 (Fla. 1931) ("a court of equity has inherent jurisdiction to quiet title

where no remedy at law exists").

**Injunctive Relief and Declaratory Judgment**

In their concluding paragraph, Plaintiffs seek injunctive relief "enjoining the state court from re-rendering the unlawful foreclosure judgment . . .and declaring all documents recorded on or against title to the subject property . . . after April 18, 2016, be declared null and void." As the Court explained in its Order Denying Motion to Quash and Motion for Reconsideration, this Court may not grant an injunction to stay the state court proceedings. DE 53 at 3-4.

**Conclusion**

Pursuant to the conclusions made above, it is hereby

**ORDERED AND ADJUDGED** that the Dixons' Motion Requesting Leave to File a Verified Second Amended Complaint Pursuant to FRCP Rule 15(a), Rule 19(a) & Rule 18(a) [DE 47] is granted in part and denied in part. The Court is mindful that Plaintiffs are pro se, and is also cognizant of the policy favoring allowing pro se individuals liberal opportunities to amend. That being said, Plaintiffs will be permitted one more opportunity to amend their complaint, but are instructed that should their claims fail to set forth the factual and legal basis for relief upon further amendment, this case will be dismissed with prejudice, and could result in the imposition of sanctions under Fed. R. Civ. P 11. With these precautions, Plaintiffs may, on or before July 19, 2019, file a Second Amended Complaint for the following claims only: FDCPA, civil theft, and quiet title. If no pleading is filed within that

time, this case will be closed for Plaintiffs failure to prosecute it.

Defendant Federal National Mortgage Association's Motion to Dismiss [DE 23] is denied as moot. It was directed to the Dixons' Verified Amended Complaint. The proposed Second Amended Complaint reviewed above has omitted Fannie Mae as a defendant. Defendant Bank of America's Motion to Dismiss Counter-Plaintiffs' Verified Amended Complaint with Prejudice [DE 37], while very helpful where applicable to the proposed Second Amended Complaint, is also denied as moot as it was also directed to the Dixons' Verified Amended Complaint.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 3rd day of July, 2019.

_____
KENNETH A. MARRA
United States District Judge